UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

Pamela and Mark Lemmer, as individuals
and as representatives of the classes,

          Plaintiffs,          **CLASS ACTION COMPLAINT**
                                  **(JURY TRIAL DEMANDED)**

v.

Bank of America, N.A. in its own capacity
and as successor by merger to
BAC Home Loans Servicing, L.P.,         Court File No. _____

          Defendant.

      Plaintiffs Pamela and Mark Lemmer ("Plaintiffs" or "the Lemmers"), on behalf of themselves and the putative classes set forth below, and in the public interest, bring the following Complaint against Defendant Bank of America, N.A., in its own capacity and as successor by merger to BAC Home Loans Servicing, L.P. ("Bank of America" or "Defendant"):

## PRELIMINARY STATEMENT

      1.     Plaintiffs and the putative class members have mortgages[1] secured by shares in housing cooperatives.

      2.     The shares held by Plaintiffs and other putative class members in these housing cooperatives allow them to occupy a unit in the housing cooperative. However, Plaintiffs and the putative class members do not own the specific units that are occupied by them; they only own shares in the cooperatives.

      3.     Plaintiffs' mortgage and the mortgages of other putative class members do not require them to maintain flood insurance coverage for the cooperative units that they occupy.

---

[1] The term "mortgage" as used herein also refers to deeds of trust, loan security agreements, and other types of security agreements.

Plaintiffs' mortgage and the mortgages of other putative class members contain no flood insurance requirement whatsoever.

4. Federal law also does not require Plaintiffs or the members of the putative class to maintain flood insurance coverage for the cooperative units that they occupy. Indeed, federal law is explicit that flood insurance for cooperative units is not available under the National Flood Insurance Program and therefore not required under the National Flood Insurance Act. *See infra* at 6-7, ¶¶ 36, 37.

5. Nevertheless, Bank of America sent letters to Plaintiffs and other putative class members (after they already had entered into their mortgage agreements), falsely claiming that they were "required by the terms of [their] mortgage and/or federal law" to purchase flood insurance to cover the cooperative units that they occupy. *See Exhibits 4, 7, 12*.

6. If Plaintiffs and other putative class members did not purchase such flood insurance – and sometimes even if they did – Bank of America would purchase force-placed flood insurance[2] for the cooperative units, at the mortgagors' expense, and arrange for a commission for its affiliate on the transaction.

7. Bank of America engaged in this conduct in bad faith, knowing that its actions were contrary to applicable law, the terms of Plaintiffs' mortgage and the mortgages of other putative class members, and the reasonable expectations of Plaintiffs and other putative class members upon originating their loans.

---

[2] "Force-placed insurance" is insurance which is purchased by a creditor to cover real property used as collateral to secure a loan. The lender purchases the insurance and then passes along the cost of the insurance to the borrower. This process is commonly referred to as "force placement." Here, of course, the insurance did not cover the collateral used to secure the loan, as the loan was secured by shares in a housing cooperative, not real property.

2

8. Based on Bank of America's conduct as described herein, Plaintiffs assert claims against Bank of America for (1) breach of contract/breach of the covenant of good faith and fair dealing; and (2) fraud.

9. Plaintiffs assert their breach of contract/breach of covenant of good faith and fair dealing claim (Count I) on behalf of a putative Nationwide Cooperative Flood Insurance Class consisting of all persons who were mortgagors on any loan or line of credit secured by an interest in their housing cooperative who were required by Bank of America to purchase or maintain flood insurance for a cooperative unit, within the applicable limitations periods.

10. Plaintiffs assert their fraud claim (Count II) on behalf of a Fraud Subclass, consisting of all persons in the Nationwide Cooperative Flood Insurance Class who purchased flood insurance for a cooperative unit in response to Bank of America's form flood insurance notices, within the applicable limitations periods.

11. Plaintiffs and the Putative Class seek injunctive relief, corresponding declaratory relief, monetary relief, and other appropriate relief for Bank of America's unlawful conduct, as described herein.

## THE PARTIES

12. Plaintiffs Pamela and Mark Lemmer reside in Centreville, Virginia. They also own shares in a housing cooperative located in Norfolk, Virginia (the "Housing Cooperative"). In connection with their ownership of these shares, Plaintiffs are entitled to occupy unit number C4 in the Housing Cooperative ("Cooperative Unit").

13. Plaintiffs are members of the putative classes as defined herein.

14. Defendant Bank of America is a national banking association headquartered in Charlotte, North Carolina. Bank of America does business in Virginia and most other states

3

throughout the United States. As part of its business, Bank of America holds and services mortgage loans and lines of credit secured by shares in housing cooperatives.

15. Bank of America, N.A. is the current lender-in-interest to Plaintiffs' Loan Security Agreement.

16. At all relevant times, Plaintiffs' mortgage loan was serviced by Bank of America, N.A. or by BAC Home Loans Servicing, L.P. on behalf of Bank of America, N.A.

17. BAC Home Loans Servicing, L.P. merged with Bank of America, N.A. on or around July 1, 2011.

18. BAC Home Loans Servicing, L.P. did not survive the merger as an independent entity.

19. To the extent that BAC Home Loans Servicing, L.P. engaged in the conduct alleged herein prior to July 1, 2011, Bank of America, N.A. is liable for such conduct in its own capacity as the lender-in-interest to Plaintiffs' mortgage. In addition, Bank of America, N.A. is liable for such pre-merger conduct because the relevant conduct of BAC Home Loans Servicing, L.P. was, at all times, approved, authorized, enabled, and ratified by Bank of America, N.A..

20. In addition, Bank of America, N.A. is liable for such pre-merger conduct because, as the successor-by-merger to BAC Home Loans Servicing, L.P., it was vested with all the liabilities and assets of BAC Home Loans Servicing, L.P.

## JURISDICTION AND VENUE

21. This Court has original jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). Plaintiffs and Defendant are citizens of different states. The amount in controversy in this action exceeds $5,000,000.00, and there are more than 100 members of the putative classes.

22.     Venue is proper in the United States District Court, Western District of North Carolina, pursuant to 28 U.S.C. § 1391, because Bank of America resides in this District and a substantial part of the events giving rise to Plaintiffs' claims arose in this District.

## FACTUAL ALLEGATIONS

*Background on Plaintiffs' Loan*

23.     On May 5, 2008, Plaintiffs signed a Loan Security Agreement. *See* Exhibit 1. Pursuant to that Agreement, Plaintiffs received a loan from Bank of America in the amount of $93,500. The loan was secured by a lien on Plaintiffs' 215 shares in the Housing Cooperative.

24.     Using the loan proceeds, Plaintiffs purchased 215 shares in the Housing Cooperative. In connection with their ownership of these shares, Plaintiffs are entitled to occupy the Cooperative Unit. There are a total of 3,520 shares outstanding in the Housing Cooperative issued to various shareholders.

25.     The current principal balance of Plaintiffs' loan is less than $89,000, and they do not have any other loans or lines of credit secured by their shares in the Housing Cooperative.

26.     Plaintiffs are not in default on their loan and are up-to-date on all payments.

*Plaintiffs' Mortgage Loan Does Not Require Them to Have Flood Insurance*

27.     When Plaintiffs originated their loan with Bank of America, it did not require, as a condition of the loan, that Plaintiffs maintain flood insurance on the Cooperative Unit they occupy.

28.     Plaintiffs did not have any flood insurance in place for the Cooperative Unit that they occupy at the time they originated their loan with Bank of America.

29.     Plaintiffs' Loan Security Agreement does not require them to purchase or maintain flood insurance on the Cooperative Unit that they occupy.

5

30. In fact, Plaintiffs' Loan Security Agreement is completely silent on the topic of flood insurance.

31. The Loan Security Agreement was drafted by Bank of America.

*Bank of America Requires Plaintiffs to Purchase Flood Insurance*

32. Despite the fact that Bank of America originated Plaintiffs' loan without requiring them to procure flood insurance, and despite the fact that Plaintiffs' Loan Security Agreement does not require them to purchase or maintain flood insurance as a condition of their loan, Bank of America sent Plaintiffs a form letter in or around November 2009, stating that they were required by their mortgage and/or federal law to purchase flood insurance for the Cooperative Unit that they occupy in the amount of $93,500.

33. This statement in the letter was false, deceptive and misleading.

34. As noted above, Plaintiffs' Loan Security Agreement does not require them to purchase or maintain flood insurance.

35. Likewise, federal law does not require Plaintiffs to purchase or maintain flood insurance for the Cooperative Unit that they occupy.

36. Under the National Flood Insurance Act ("NFIA"), lenders are generally required to ensure that any improved property in a Special Flood Hazard Area ("SFHA") that secures a loan or line of credit is covered by flood insurance, but *only* if such "flood insurance has been made available" under the NFIA. 42 U.S.C. § 4012a(b)(1).

37. Flood insurance is not required under the NFIA for individual units in cooperative buildings because such insurance is unavailable under the National Flood Insurance Program ("NFIP"). *See* Loans in Areas Having Special Flood Hazards; Interagency Questions and Answers, Regarding Flood Insurance, Fed. Reg. 35,914 at 35,943 (July 21, 2009), available at

6

http://edocket.access.gpo.gov/2009/pdf/E9-17129.pdf.  *Accord*, National Flood Insurance Manual at GR 7 (October 1, 2011), available at http://www.fema.gov/business/nfip/manual.shtm (listing "Cooperative Unit within Cooperative Building" as an "ineligible risk").[3]

38. Moreover, flood insurance coverage is only required under the NFIA for loans "secured by improved real estate or a mobile home." *See* 42 U.S.C. § 4012a(b)(1) Plaintiffs' loan is not secured by real estate; rather it is secured by a lien on their shares in the Housing Cooperative.

39. Thus, Bank of America's statements in its form letters to Plaintiffs were false, deceptive, and misleading as to the purported flood insurance requirements of both federal law and Plaintiffs' Loan Security Agreement.

*Plaintiffs Purchase Flood Insurance to Satisfy Bank of America's Unjustified Demands*

40. Based on the false and deceptive statements and the demand made by Bank of America in the form letter that they received, Plaintiffs purchased flood insurance for the Cooperative Unit that they occupy through Allstate, with a coverage amount of $93,500. The yearly premium for this policy (which was effective from November 24, 2009 to November 24, 2010) was over $500. Plaintiffs paid that premium.

41. The following year, Plaintiffs renewed their Allstate policy for the period from November 24, 2010 to November 24, 2011, at a cost of $564. Plaintiffs paid that premium.

42. Absent the correspondence they received from Bank of America, Plaintiffs would not have purchased either of these flood insurance policies.

---

[3] The only insurance available for cooperatives under the NFIP is coverage for an entire building. Such coverage must be procured in the name of the cooperative, not the individual shareholders in the cooperative, like the Plaintiffs. *Id*. at GR 6.

7

*Bank of America Demands Even More Flood Insurance*

43. Even though Plaintiffs obtained the flood insurance coverage described above, in April 2011, Bank of America began demanding Plaintiffs obtain even more flood insurance coverage on their Cooperative Unit. *See* Exhibits 2, 3. Because Plaintiffs did not obtain the additional coverage demanded by Bank of America, it subsequently purchased a lender-placed "gap" policy, the cost of which was paid for out of Plaintiffs' mortgage escrow account in May 2011, providing for $76,694 in additional flood coverage on Plaintiffs' Cooperative Unit. *See* Exhibits 4, 5.

44. For unexplained reasons, Bank of America later cancelled this lender-placed policy, and replaced it with another lender-placed "gap" policy with an even greater coverage amount ($92,262). *See* Exhibits 6, 7, 8. The premium cost for this policy ($484.38) also was charged to Plaintiffs' escrow account.[4]

45. After Plaintiffs elected not to renew their Allstate policy in November 2011, Bank of America purchased a third lender-placed policy on Plaintiffs' Cooperative Unit, providing for $185,762 in coverage (the sum of the prior Allstate policy [$93,500] and the second lender-placed policy [$92,262]), effective November 24, 2011 to November 24, 2012. *See* Exhibits 10, 11, 12, 13. The cost of this lender-placed policy ($1,795) also was charged to Plaintiffs' escrow account.[5] As a result of Bank of America's force-placement of flood insurance, Plaintiffs' mortgage payments increased from $589.50 to $963.72 per month, effective April 1, 2012.

---

[4] The premium for the first lender-placed policy was refunded when the second lender-placed policy was issued. *See* Exhibit *6*.

[5] At the time Bank of America purchased the third lender-placed policy, it issued a prorated refund to Plaintiffs' escrow account on the second lender-placed policy in the amount of $169.82. *See* Exhibit 9. However, Bank of America did not refund the balance of the premium ($314.56) on the second lender-placed policy.

8

46. The coverage amount for the third lender-placed policy is approximately double Plaintiffs' outstanding principal balance, even though no coverage is required for the Cooperative Unit that they occupy under either their Loan Security Agreement or federal law.[6]

47. Bank of America has represented to Plaintiffs that it intends to lender-place another flood insurance policy on Plaintiffs' Cooperative Unit in November 2012.

*Bank of America's Commissions Scheme*

48. Bank of America's letters to Plaintiffs in connection with this lender-placed coverage state that "we may receive compensation for services rendered and costs incurred in securing this insurance for you" and "our licensed affiliated agency may receive a commission for placing this insurance." *See, e.g.*, Exhibits 4, 7, 12.

49. Bank of America's affiliated insurance agency did receive a commission in connection with the lender-placed flood insurance coverage that Bank of America purchased on Plaintiffs' Cooperative Unit.

50. The commission arrangements between major banks (including Bank of America) and insurance companies that issue force-placed coverage were recently exposed in *American Banker* magazine. *See* Exhibit 14. As discussed in this article, these commission arrangements create incentives for Bank of America and other mortgage servicers "to force-place excessive insurance and overcharge consumers for policies that provide minimal benefit[.]" *Id.* at 1

## CLASS ACTION ALLEGATIONS

51. Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

---

[6] It appears that Bank of America may have purchased a fourth lender-placed policy at Plaintiffs' expense. On February 23, 2012, Bank of America sent Plaintiffs a notice stating that the third lender-placed policy would be cancelled due to "duplicate coverage." However, Bank of America has yet to disclose what "duplicate" coverage this letter refers to.

9

Case 3:12-cv-00242-MOC-DSC   Document 1   Filed 04/20/12   Page 9 of 19

52. Plaintiffs assert their breach of contract/breach of covenant of good faith and fair dealing claim (Count I) on behalf of a Proposed Nationwide Cooperative Flood Insurance Class defined as follows:

> **Proposed Nationwide Cooperative Flood Insurance Class:** All persons who were mortgagors on any loan or line of credit secured by an interest in their housing cooperative who were required by Bank of America to purchase or maintain flood insurance for a cooperative unit, within the applicable limitations periods.

53. Plaintiffs assert their fraud claim (Count II) on behalf of a proposed Fraud Subclass defined as follow:

> **Proposed Fraud Subclass:** All persons in the Nationwide Cooperative Flood Insurance Class who purchased flood insurance for a cooperative unit after receiving one of Bank of America's form flood insurance notices, within the applicable limitations periods.

54. <u>Numerosity</u>: The putative classes are so numerous that joinder of all class members is impracticable. Plaintiffs are informed and believe that during the relevant time period, thousands of Bank of America customers satisfy the definition of the putative classes.

55. <u>Typicality</u>: Plaintiffs' claims are typical of the members of the putative classes. Plaintiffs are informed and believe that (1) Plaintiffs' mortgage documents are typical of those of other putative class members; (2) the form letters that Plaintiffs received are typical of those received by the other putative class members; (3) Bank of America treated Plaintiffs consistent with other putative class members in accordance with Bank of America's uniform policies and practices; (4) it was typical for Bank of America to require putative class members to purchase and maintain flood insurance for Cooperative Units even though such flood insurance was not required by their mortgage agreements or federal law; and (5) it was typical for Bank of America's affiliated insurance agency to receive commissions in connection with lender-placed flood insurance.

10

56. <u>Adequacy</u>: Plaintiffs will fairly and adequately protect the interests of the putative classes, and have retained counsel experienced in complex class action litigation, including flood insurance litigation. *See Hofstetter v. Chase Home Finance, LLC*, No. 10-01313, 2011 WL 1225900 (N.D.Cal. Mar. 31, 2011) (finding counsel of record to be adequate and appointing counsel as class counsel in class action lawsuit asserting similar claims).

57. <u>Commonality</u>: Common questions of law and fact exist as to all members of the putative classes and predominate over any questions solely affecting individual members of the putative classes, including but not limited to:

   a) whether Bank of America has a pervasive policy and practice of misrepresenting to mortgagors the federal law's requirements with respect to flood insurance coverage for units in housing cooperatives;

   b) whether Bank of America has a pervasive policy and practice of misrepresenting to mortgagors the requirements of their mortgages with respect to flood insurance coverage for units in housing cooperatives;

   c) whether the mortgages of the Plaintiffs and the classes authorize Bank of America to demand and/or force-place flood insurance in connection with loans or lines of credit secured by shares in housing cooperatives;

   d) whether Bank of America's flood insurance notices to borrowers with loans secured by shares in housing cooperatives are false, deceptive, and/or misleading;

   e) whether Bank of America breached its mortgage agreements with putative class members by demanding unauthorized flood insurance;

11

f) whether Bank of America owes its customers a duty of good faith and fair dealing, and if so, whether Bank of America breached this duty by, *inter alia*, (1) demanding flood insurance when such insurance coverage was not required by putative class members' mortgage agreements or federal law; and (2) arranging for commissions for its affiliated insurance agency in connection with force-placed flood insurance;

g) whether Bank of America fraudulently misrepresented that putative class members' flood insurance coverage was insufficient under their mortgage agreements and/or federal law when in fact no flood insurance was required by such agreements or federal law;

h) the appropriateness and proper form of any declaratory or injunctive relief; and

i) the proper measure of damages sustained by the putative classes.

58. This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Bank of America has acted or refused to act on grounds that apply generally to the putative classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the classes as a whole.

59. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the putative classes predominate over any questions affecting only individual members of the putative classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Bank of America's conduct described in this Complaint stems from common and uniform policies and practices, resulting in unnecessary flood insurance premiums and related charges that are readily

12

calculable from Bank of America's records and other class-wide evidence. Members of the putative classes do not have an interest in pursuing separate individual actions against Bank of America, as the amount of each class member's individual claims is small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Bank of America's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all putative class members' claims in a single forum.

60. Plaintiffs intend to send notice to all members of the putative classes to the extent required by Rule 23. The names and addresses of the putative class members are available from Bank of America's records.

## FIRST CLAIM FOR RELIEF

### BREACH OF CONTRACT/ BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

### ON BEHALF OF THE PLAINTIFFS AND PROPOSED NATIONWIDE COOPERATIVE FLOOD INSURANCE CLASS

61. Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

62. Bank of America is the lender-in-interest to Plaintiffs' Loan Security Agreement and is bound by the terms of their Loan Security Agreement.

63. Plaintiffs' Loan Security Agreement does not require any flood insurance coverage as a condition of their loan.

64. Plaintiffs' Loan Security Agreement is typical of the mortgage agreements of the Nationwide Cooperative Flood Insurance Class members.

13

65. Bank of America breached the terms of Plaintiffs' Loan Security Agreement and the mortgage agreements of the Nationwide Cooperative Flood Insurance Class members by requiring them to purchase and/or maintain flood insurance on the cooperative units that they occupy and/or by force-placing such flood insurance on the cooperative units that they occupy.

66. Bank of America also breached the implied covenant of good faith and fair dealing inherent in Plaintiffs' Loan Security Agreement and the mortgage agreements of other Nationwide Cooperative Flood Insurance Class members.

67. Bank of America owed Plaintiffs and the Nationwide Cooperative Flood Insurance Class a duty of good faith and fair dealing, by virtue of Bank of America's contractual relationship with Plaintiffs and other Nationwide Cooperative Flood Insurance Class members.

68. Bank of America breached this duty by, among other things: (1) misrepresenting both federal requirements and contractual requirements regarding flood insurance for cooperative units; (2) requiring class members to purchase and/or maintain flood insurance for cooperative units and/or by force-placing such coverage when it was not required by their mortgages or federal law; and (3) arranging for commissions for its affiliate in connection with lender-placed flood insurance.

69. Bank of America willfully engaged in the foregoing conduct in bad faith, for the purpose of (1) gaining unwarranted contractual and legal advantages; (2) unfairly and unconscionably maximizing revenue from Plaintiffs and other Nationwide Cooperative Flood Insurance Class members; and (3) generating commissions for Bank of America's affiliate.

70. The foregoing breaches were willful and not the result of mistake or inadvertence. Bank of America systematically and pervasively required Nationwide Cooperative Flood Insurance Class members to purchase and maintain flood insurance when Bank of America

14

knew, full well, that such insurance was not required by their mortgage documents or federal law.

71. As a direct result of Bank of America's breaches of contract and breaches of the implied covenant of good faith and fair dealing, Plaintiffs and the Nationwide Cooperative Flood Insurance Class have been injured, and have suffered actual damages and monetary losses, in the form of unwarranted insurance premiums, interest payments, and/or other charges.

72. Plaintiffs and the Nationwide Cooperative Flood Insurance Class are entitled to recover their damages and other appropriate relief for the foregoing contractual breaches.

## SECOND CLAIM FOR RELIEF

## COMMON LAW FRAUD

## ON BEHALF OF THE PLAINTIFFS AND THE FRAUD SUBCLASS

73. Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

74. Bank of America falsely represented to Plaintiffs and all other members of the Fraud Subclass that they were required to purchase and/or maintain flood insurance on their cooperative units and/or that their flood insurance coverage on their cooperative units was not sufficient under their mortgage agreements and/or federal law when in fact no flood insurance was required on their cooperative units by their mortgage agreements or federal law.

75. These representations were material.

76. Bank of America knew it had no reasonable basis for making these representations, and it knew that those representations falsely described the mortgage agreements it had with housing cooperative borrowers and federal law.

15

77. Bank of America intended to mislead Plaintiffs and other housing cooperative borrowers, and to induce them to act upon these representations.

78. These representations were made for the purpose of gaining unwarranted contractual and legal advantages.

79. Plaintiffs and the Fraud Subclass reasonably and justifiably relied on Bank of America's intentional misrepresentations, and based on those misrepresentations, purchased flood insurance coverage that was not required under federal law or their mortgage agreements after receiving Bank of America's false and misleading flood insurance notices.

80. As a direct result of Bank of America's intentional and knowing misrepresentations, Plaintiffs and the Fraud Subclass have suffered damages in the form of unnecessary insurance premiums, interest payments, and/or other charges. Plaintiffs and the Fraud Subclass are entitled to recover these damages and other appropriate relief from Bank of America. In addition, Plaintiffs and the Fraud Subclass are entitled to punitive damages because Bank of America acted wantonly, oppressively, maliciously, or in conscious disregard of the rights of Plaintiffs and other class members.

## PRAYER FOR RELIEF

81. WHEREFORE, Plaintiffs, on behalf of themselves and the putative classes, pray for relief as follows:

   a) Determining that this action may proceed as a class action under Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure;

   b) Designating Plaintiffs as class representatives for the putative classes;

   c) Designating Plaintiffs' counsel as co-lead counsel for the putative classes pursuant to Rule 23(g) of the the Federal Rules of Civil Procedure;

d) Declaring that Bank of America breached its contracts with Plaintiffs and the Nationwide Cooperative Flood Insurance Class and its duty of good faith and fair dealing to Plaintiffs and the Nationwide Cooperative Flood Insurance Class;

e) Declaring that Bank of America's conduct was fraudulent;

f) Determining that Bank of America acted wantonly, oppressively, maliciously, or in conscious disregard of the rights of Plaintiffs and other class members;

g) Awarding appropriate equitable relief, including but not limited to an injunction requiring Bank of America to reverse all unlawful, unfair, or otherwise improper charges for flood insurance coverage for putative class members, allowing putative class members to close loans or credit lines without first paying premiums for flood insurance that was not necessary or required by law or contract, prohibiting Bank of America from imposing unwarranted insurance requirements on cooperative borrowers, and ordering Bank of America to cease and desist from engaging in further unlawful conduct in the future;

h) Awarding actual damages, punitive damages, penalties, and interest to the full extent permitted by law;

i) Awarding reasonable attorneys' fees and costs to the full extent permitted by law; and

j) Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

82. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs and the putative classes demand a trial by jury.

Respectfully submitted,

Dated: April 20, 2012                    **WHITFIELD BRYSON & MASON, LLP**

s/Daniel K. Bryson
Daniel K. Bryson, NC Bar No. 15781
Karl Amelchenko, NC Bar No. 43387
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
Email: dan@wbmllp.com
            karl@wbmllp.com

**NICHOLS KASTER, PLLP**
Kai Richter, MN Bar No. 0296545*
E. Michelle Drake, MN Bar No. 0387366*
Sarah W. Steenhoek, MN Bar. No. 0390258*
        (*pro hac vice* applications forthcoming)
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 215-6870
Email: krichter@nka.com
            drake@nka.com
            ssteenhoek@nka.com

**SHAPIRO HABER & URMY, LLP**
Edward F. Haber, MA Bar # 215620*
Adam M. Stewart, MA Bar #661090*
        (*pro hac vice* applications forthcoming)
Shapiro Haber & Urmy LLP
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134
Email: ehaber@shulaw.com
            astewart@shulaw.com

**ATTORNEYS FOR PLAINTIFFS AND THE PUTATIVE CLASSES**